**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TYREE LAWSON,** | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 18-3670** |
| | : | |
| **SCI GRATERFORD DEPUTY** | : | |
| **SUPERINTENDENT BANTA, et al.,** | : | |
| **Defendants.** | : | |

**McHUGH, J.**                                                                                    **JULY 21, 2020**

## MEMORANDUM

This is a prisoner civil rights suit brought under 42 U.S.C. § 1983 based on claims of unlawful mail interference.  Plaintiff Tyree Lawson alleges that Defendants Laura Banta, Kelly Long, and unnamed John/Jane Does in the SCI-Graterford mailroom have allowed or participated in efforts to prevent Plaintiff from sending or receiving mail.  Specifically, Plaintiff alleges that their interference resulted in Plaintiff's mail being improperly withheld upon its arrival and the unlawful interception of a complaint filed in a separate case.  Discovery is now closed, and Plaintiff has failed to produce evidence of Defendants' specific involvement in undertaking or acquiescing to any of the alleged wrongdoing.  Defendants have also produced uncontested evidence that rebuts key elements of his claims.  They have moved for summary judgment, and their motion will be granted.

### I.       Relevant Background

Plaintiff is currently incarcerated at SCI-Graterford, having transferred there from SCI-Forest on May 25, 2017.  Pl. Dep. 14:18-25, ECF 59-5.  During the relevant time period, Defendant Banta was the Deputy Secretary for Centralized Services and Defendant Long was the

mailroom supervisor at SCI-Graterford.  Am. Compl., Count Two ¶¶ 2-3, ECF 21; Def. MSJ at

2, ECF 59-1.  Banta's role did not involve management or supervision of the mailroom.  Banta

Interrog. Resp. ¶ 8, ECF 59-6.  Both Counts II and IV of Plaintiff's Amended Complaint allege a

deprivation of Plaintiff's right to communicate with the public and retaliation for his exercise of

First Amendment rights.[1]  Count II relates to Plaintiff's purported difficulties accessing a box of

legal materials he had mailed himself and other issues sending and receiving correspondence,

while Count IV relates specifically to Defendants' supposed unlawful opening, interception, and

forwarding of a complaint in a separate proceeding.

### A. Plaintiff's alleged difficulties receiving a box of materials mailed from SCI-Forest

Plaintiff claims he shipped himself a box of legal materials from SCI-Forest on May 25,

2017, the day he transferred to SCI-Graterford.  Pl. Dep. 43:19-44:2.  Some of the materials in

the box were relevant to a pending lawsuit Plaintiff had filed against the mailroom supervisor at

SCI-Forest, Jay Beach.  *Id*. at 53:1-54:7.

According to Plaintiff, the box arrived at SCI-Graterford the following day, May 26, but

the box was not actually sent from the mailroom to him until early July 2017.  *Id.* at 46:9-21.

Plaintiff alleges that he wrote Defendant Long multiple requests for the box but was told that he

could not receive it, despite SCI-Graterford's policy that all mail should be given to inmates

within a 24-hour period.  *Id*. at 47:5-24.  Plaintiff speculates that the box was withheld from him

due to Long's desire to punish him for the lawsuit underway against Jay Beach at SCI-Forest.

*Id*. at 48:1-20.  The delay in receiving the box prevented Plaintiff from being able to draft

---

[1] Earlier in the litigation, Defendants filed a Motion to Sever Counts I and III of the Amended Complaint.  ECF 26.
I granted Defendants' Motion in an Order instructing the Clerk of Court to create a separate civil action for each of
those two claims.  ECF 37.  Accordingly, only Counts II and IV are currently before me.

interrogatories against Beach in a prompt fashion and defend against a pending prosecution, though the conviction in the prosecution at issue was ultimately overturned. *Id*. at 53:1-55:9. Plaintiff did not discover any missing materials upon receipt of the box. *Id*. at 51:18-52:4.

**B. Plaintiff's alleged general issues receiving and sending mail**

In addition to the late receipt of his box of legal materials, Plaintiff states that his outgoing pieces of correspondence posted by mail were not arriving at their destinations. *Id*. at 57:1-60:14. Plaintiff claims that he sent letters to a number of law firms requesting *pro bono* representation, but did not receive responses to these letters, which Plaintiff assumes meant that they were not received. *Id*. at 60:15-61:11. Plaintiff also testified that his friends and family members informed him that they did not receive correspondence he sent them, *id*. at 61:13-62:22, and others who attempted to send him mail had it returned to them, *id*. at 64:12-65:7. According to Plaintiff, the only mail he received during his first year and a half at SCI-Graterford was from the Office of Attorney General and assorted publications for prisoners. *Id*. at 62:24-63:20.

As he did with the box, Plaintiff testifies that he attempted to rectify the situation by sending request slips to Defendant Long. *Id*. at 65:8-16. Additionally, sometime in October 2017, Plaintiff claims he spoke with Defendant Banta while she was conducting her regular rounds, informing her that his family and friends had experienced problems sending mail to him. *Id*. at 68:4-69:5. Plaintiff avers that Banta responded by asking him "What did you do to the mailroom?," to which he mentioned ongoing suits pending against SCI-Forest officials and grievances he had filed. *Id*. at 69:6-15. According to Plaintiff, Banta replied by asking him to contact her again once he had proof. *Id*. at 69:16-20.

A few months later, in January 2018, Plaintiff claims he obtained proof regarding his mail problems, receiving a copy of an envelope containing mail sent to him from the Office of

3

Attorney General.  *Id*. at 71:14-72:13.  The mail was returned and marked as undeliverable

because "the inmate commitment name and number do not match."  *Id*.; Plaintiff's Appeal of

Grievance 715212, ECF 59-7.  Based on his review of the envelope, Plaintiff concluded that

someone had tried to scratch out a part of the number.  He therefore showed it to a number of

prison officials, including Defendant Banta.  Pl. Dep. 72:7-73:7; 73:18-74:11.  Allegedly Banta

asked for and received a copy of the envelope from Plaintiff, but never followed up with him and

Plaintiff did not see her again.  *Id.* at 73:18-74:11; 74:14-75:1.

### C.  SCI-Graterford's alleged interception of Plaintiff's complaint

Finally, Plaintiff contends that staff at SCI-Graterford interfered with his filing of a

complaint in another lawsuit initiated against SCI-Forest on March 24, 2018, in the Forest

County Court of Common Pleas.  *Id*. at 24:3-24; Docket Report from *Lawson v. Menteer*, ECF

59-8.  The Court granted Plaintiff's attached *in forma pauperis* application on April 25, 2018,

and the docket reflects that the sheriff's Return of Service to Lisa Reeher, SCI-Forest

Superintendent's Assistant, was made the following day on April 26, 2018.  ECF 59-8; Sheriff's

Return of Service, ECF 59-9.  Reeher has sworn that she subsequently forwarded the complaint

to the Governor's Office of General Counsel, which also consults with the Office of Attorney

General, as per normal procedure.  Reeher Decl. ¶¶ 3-4, ECF 59-3; Kovatis Decl. ¶ 9, ECF 59-4.

Plaintiff allegedly did not receive notice from the sheriff that the complaint had been

served, so Plaintiff testified that he moved to reinstate the complaint.  Pl. Dep. 25:12-16.  The

*Menteer* docket does not contain any reference to this motion.  ECF 59-8.  Next, Plaintiff

received a copy of a Notice of Removal filed by the Office of Attorney General on May 16, *id*. at

25:17-22, and approximately two days later, Plaintiff received a response from the Forest County

Sheriff's Office dated May 14 indicating that they received nothing from the Clerk of Courts

regarding service of his complaint, *id*. at 25:23-26:3; Sheriff's Letter, ECF 59-11.  Plaintiff thus

4

concluded that the defendants must have been served based on Defendant Long, or other mailroom employees, opening his mail and sending the complaint directly to the Office of Attorney General.  Pl. Dep. 26:4-7; 27:3-16.  Plaintiff further concluded that the docket entry showing service being made on April 26 was fraudulently entered "after the fact."  *Id*. at 34:11-35:5; 36:15-39:24.

## II.    Standard of Review

This Motion is governed by the well-established standard for summary judgment set forth in Fed. R. Civ. P. 56(a), as amplified by *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986).  Because Plaintiff is proceeding *pro se*, his pleadings must be liberally construed. *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011).  The moving party has the burden of demonstrating the absence of genuine issues of material fact.  *Celotex*, 477 U.S. at 323.  If the moving party meets this burden, the nonmoving party must present evidence of a genuine issue in rebuttal.  *Williams v. Borough of West Chester, Pennsylvania*, 891 F.2d 458, 464 (3d Cir. 1989).  Determining whether the nonmoving party has adduced the required quantum of evidence to survive summary judgment "must be done on a case-by-case basis."  *Id.* Although Plaintiff has not responded, because a motion for summary judgement cannot be granted as unopposed,[2] I have undertaken a full analysis of the merits.

## III.   Discussion

The Third Circuit has held that "state prisoners, by virtue of their incarceration, 'do not forfeit their First Amendment right to use of the mails.'"  *Jones v. Brown*, 461 F.3d 353, 358 (3d

---

[2] "[A] district court cannot provide by local rule that a motion for summary judgment will be automatically granted when the opposing party fails to respond, because such a rule would violate Fed. R. Civ. P. 56.  Even though Rule 56(e) requires a non-moving party to set forth specific facts showing that there is a genuine issue for trial, it is well-settled . . . that this does not mean that a moving party is automatically entitled to summary judgment if the opposing party does not respond."  *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) (cleaned up).

Cir. 2006) (quoting *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995)).  Moreover, "[a] state

pattern and practice . . . of opening legal mail outside the presence of the addressee inmate

interferes with protected communications, strips those protected communications of their

confidentiality, and accordingly impinges upon the inmate's right to freedom of speech." *Jones*,

461 F.3d at 359.

### A.   Count IV fails because no reasonable jury could conclude that Plaintiff's complaint was not properly served

I will begin by addressing one of Plaintiff's most troubling claims, namely that

Defendants or unnamed mailroom employees opened the envelope containing his complaint in

*Menteer* and forwarded it to the Office of Attorney General themselves.  Plaintiff bases this

contention upon the May 14 letter that he received from the Forest County Sheriff's Office,

which stated that it had not received a complaint to be served upon the *Menteer* defendants.  His

receipt of this letter, along with the fact that the defendants in the case filed a Notice of Removal

despite the alleged lack of service, prompted Plaintiff to conclude that Defendants must have

sent the *Menteer* complaint to the Office of Attorney General themselves.  Plaintiff provides no

direct evidence, however; his claim relies solely upon inference.

Viewed in isolation, Plaintiff's account of events could plausibly support an inference

that individuals in the mailroom must have opened or tampered with his complaint.  Defendants,

however, have produced evidence such that no reasonable jury could reach such a conclusion.

The relevant docket entry in *Menteer*, an official court document, reflects that process was

served on April 26, 2018.  Defendants have obtained a sworn affidavit from the Forest County

Deputy Sheriff, also dated April 26, 2018, that service was personally made upon SCI-Forest.

Additionally, Defendants have produced a sworn declaration from the Superintendent's Assistant

at SCI-Forest, Lisa Reeher, that she received service of process on or about April 26, 2018 and forwarded the complaint to the Office of Attorney General.

On a motion for summary judgment, "if the factual context renders the nonmoving parties' claim implausible . . . they must come forward with more persuasive evidence to support their claim than would otherwise be necessary." *Williams*, 891 F.2d at 460 n.2 (3d Cir. 1989) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (internal brackets omitted). Here, the evidence brought forth by Defendants renders Plaintiff's claim highly implausible. It would require a jury to conclude that two public officials, in separate institutions, one of whom did not know Plaintiff personally, were motivated to conspire to hide the fact that his complaint was intercepted. Plaintiff simply has not supplied any evidence that such a conspiracy occurred. I therefore find that Plaintiff's claims of mail interference and retaliation under Count IV of his Amended Complaint fail for lack of proof.

**B. Count II fails because Defendants cannot be held liable directly or based on their supervisory authority**

*1. Plaintiff's core mail interference claims fail*

Plaintiff alleges more general ongoing problems receiving and sending mail. Plaintiff has not, however, provided any evidence directly tying either named Defendant to the alleged mail interference, as is required under § 1983. "A defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Moreover, "a civil rights complaint is adequate where it states the conduct, time, place, and persons responsible." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). In his deposition testimony, Plaintiff has acknowledged that he is "not privileged to the mailroom" and does not "know what goes on in the mailroom." Pl. Dep. 27:18-19. Plaintiff could therefore only hold named Defendants liable for mail problems based on their roles as supervisors.

The Third Circuit has recognized two theories of supervisory liability under § 1983. First, a supervisor can be liable if she has "established and maintained a policy, practice or custom which directly caused the constitutional harm"; second, she can be found liable if she "participated in violating plaintiff's rights, directed others to violate them, or, as the person[] in charge, had knowledge of and acquiesced in [her] subordinates' violations." *Santiago v. Warminster Township*, 629 F.3d 121, 129 n.5 (3d Cir. 2010). A supervisor's "liability cannot be predicated solely on the operation of *respondeat superior*" in a § 1983 civil rights suit. *Rode*, 845 F.2d at 1207.[3]

Once again, Plaintiff does not provide any evidence that Defendants have maintained a policy or practice of interfering with his mail, nor that they acquiesced in violations committed by subordinates. With respect to Defendant Long, Plaintiff bases his claim of her culpability on the fact that, in trying to obtain his box of legal materials, he wrote "request after request [for] my property" to the mailroom and received "vague responses through Lieutenant and the property Sergeant." Pl. Dep. 47:5-11. As for motive, Plaintiff can only speculate that Defendant Long withheld his box and interfered with his subsequent correspondence due to "retaliation" connected to his ongoing lawsuit against Jay Beach at SCI-Forest. Pl. Dep. 48:3-49:10.

---

[3] After this motion was filed, Plaintiff filed a Motion to Suppress his deposition testimony, ECF 61, which I denied, and a Motion to Identify Jane Does, ECF 62. I consider the Motion to Identify a discovery motion, and it will be separately denied. First, discovery having ended, it is untimely. Second, Plaintiff seeks to name two specific employees as defendants, Bonnie Purcell and Margaret Wagner, based solely on information he claims to have obtained from a third party that they are involved in handling legal mail, with no suggestion that they have engaged in any wrongdoing. As noted above, Plaintiff's case depends solely on inference, and the principal inference he seeks to draw collapses in the face of evidence produced by the defense. Finally, as evidenced by Plaintiff's Motion to Suppress his deposition testimony, his approach to litigation is cavalier and raises questions as to his good faith. In that regard, use of the PACER Case Locator reveals that Plaintiff has filed over twenty actions. He is no longer eligible to file cases *in forma pauperis* because at least four of his cases have been dismissed on substantive grounds for lack of merit. *See Lawson v. Barger*, W.D. Pa. Civ. A. No. 17-97; *Lawson v. Hollis*, W.D. Pa. Civ. A. No. 17-96; *Lawson v. Crowther*, W.D. Pa. Civ. A. No. 17-39; *Lawson v. Hoisington*, E.D. Pa. Civ. A. No. 11-171; *Lawson v. Crowther*, W.D. Pa. Civ. A. No. 17-39. I have considered all of this in exercising my discretion to decline Plaintiff further discovery.

In a case with similar facts, summary judgment was granted to a mailroom supervisor where the plaintiff could not provide any direct evidence that the supervisor had interfered with his mail or retaliated against him. *Huertas v. Henry*, 2011 WL 3667274, at *8 (W.D. Pa. July 27, 2011). The plaintiff there arguably had a stronger case based on circumstantial evidence, as the supervisor had allegedly told him "I inspect RHU mail and you receive more mail than any other inmate down there" and instructed him to write him with complaints as he "handles the RHU mail," indicating more specific familiarity with respect to the plaintiff's mail problems. *Id*. at *7. Despite this, the court found that the plaintiff failed to "produce sufficient evidence from which the factfinder could conclude that Defendant was personally involved in the alleged misconduct," and thus that the supervisor could not be found liable. *Id*. at *8. The Third Circuit then affirmed dismissal. *See Huertas v. Sobina*, 476 Fed. App'x. 981, 983 (3d Cir. 2012).

Plaintiff's claims against Defendant Banta are not based on any alleged direct participation in the supposed mail interference undertaken by Defendant Long and other mailroom employees, but on her alleged failure to properly help Plaintiff cure his problems after Plaintiff informed her of them. It is undisputed, however, that Defendant Banta had no supervisory authority over the mailroom. Banta Interrog. Resp. ¶ 8. The Third Circuit has held that "[a]s a general matter, a person who fails to act to correct the conduct of someone over whom he or she has no supervisory authority cannot fairly be said to have 'acquiesced' in the latter's conduct" for the purposes of § 1983 liability. *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Consequently, although it would be troubling as a general matter if it is true that Defendant Banta heard Plaintiff's concerns and took no further action, her failure to

act would not rise to the level of a federal civil rights violation.  Plaintiff's claims against Defendants under Count II therefore cannot succeed.

### 2. *Plaintiff's additional access to courts and retaliation claims fail*

Plaintiff also brings related access to courts and retaliation claims.[4]  In order for an access to courts claim to succeed, a plaintiff must show "(1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008).  Although Plaintiff testified to the delay in receiving legal materials relevant to ongoing civil and criminal actions in which he was involved, he does not attest that he suffered any legal injury as a result, and he did not even find it necessary to request any continuances at the time.  Pl. Dep. 53:14-17. In fact, the conviction in his pending criminal case was later overturned.  Consequently, Plaintiff cannot make out a valid access to courts claim because he suffered no actual injury.

For a retaliation claim to succeed, a prisoner-plaintiff must show that (1) the conduct which led to the alleged retaliation was constitutionally protected; (2) he suffered some "adverse action" at the hands of the prison officials; and (3) there exists a causal link between the exercise of his constitutional rights and the adverse action taken against him. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  To establish the existence of a causal link, "a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

---

[4] While Plaintiff's Amended Complaint does not explicitly reference access to courts, it does allege that Defendants have infringed upon his right to communicate with the public, and he has testified that his ability to represent himself in ongoing legal actions was affected by the supposed violations.

Plaintiff can plausibly satisfy the first two elements of his retaliation claim, because he alleges mail interference as a result of his filing a lawsuit against Jay Beach at SCI-Forest, a protected activity.  But Plaintiff has failed to produce any direct evidence suggesting a causal link between the alleged adverse action and his activity.  He can only speculate that prison officials were even aware of his pending suit against an officer in an entirely different facility, and further speculate that, as prison employees, they held animus against him.  Therefore, his retaliation claim cannot succeed.

**IV.**    **Conclusion**

For the reasons set forth above, Defendants' Motion for Summary Judgment will be **GRANTED**.  An appropriate Order follows.

    /s/ Gerald Austin McHugh
Gerald Austin McHugh
United States District Judge

11